IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SEAN MASON, )
)
Plaintiff, )
) Civil Action No.: 07 C 5615
v. )
) Suzanne B. Conlon, Judge
MEDLINE INDUSTRIES, INC. and THE )
MEDLINE FOUNDATION, )
)
Defendants. )
)

## MEMORANDUM OPINION AND ORDER

Sean Mason brings a *qui tam* action against his former employer, Medline Industries, Inc., and its affiliated not-for-profit corporation, The Medline Foundation (collectively "Medline"), asserting violations of the False Claims Act, 31 U.S.C. § 3729(a)(1) (Count I), and the Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. § 715/1 *et seq.* (Count II). Medline moves to dismiss the amended complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). For the reasons set forth below, the motion is granted.

## BACKGROUND

The following facts are derived from the amended complaint. Medline sells medical-surgical supplies and equipment to healthcare providers that participate in Medicare and Medicaid federal healthcare programs. Am. Comp. ¶¶ 2, 23. Medline also enters into sales and distribution contracts directly with the federal government. *Id.* ¶¶ 23, 136.

From December 1998 through September 2005, Medline employed Mason in several different positions, all dealing with customer contracts and account management. *Id.* ¶ 17. Over

the course of his employment, Mason alleges he observed Medline engaging in extensive acts of fraud resulting in the submission of false claims to the government. First, he alleges Medline paid unlawful kickbacks and bribes to solicit business from healthcare providers. *Id.* ¶¶ 31-37. Participation in federal Medicare and Medicaid programs requires healthcare providers to submit annual cost reports along with certifications attesting to their compliance with anti-kickback laws. *Id.* ¶¶ 105-110. Mason claims that by engaging in bribes and kickbacks, Medline knowingly caused providers to submit false cost reports to the federal government in violation of the False Claims Act. *Id.* ¶ 114.

Second, he alleges Medline fraudulently induced the government into accepting inappropriate healthcare providers as pricing benchmarks for government contracts. *Id.* ¶¶ 144-47. Throughout the terms of its contracts with the government, Medline also engaged in deceitful acts to avoid providing the federal government with lower prices offered to private healthcare providers. *Id.* ¶¶ 153-169. Medline's claims to the government were inflated as a result. *Id.* ¶¶ 147, 168-69.

Third, Mason alleges Medline fraudulently overbilled the federal government by exaggerating its actual costs in its claims for payment. *Id.* ¶¶ 170-71. Mason filed this case in October 2007 on behalf of the United States and the State of Illinois. In accordance with the False Claim Act's *qui tam* provision, 31 U.S.C. § 3730, the complaint remained under seal while the federal government and Illinois determined whether they would intervene. Both declined intervention in January 2009. The court vacated the sealing order shortly thereafter, and Medline was served with the complaint. Medline now seeks dismissal of Mason's amended complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

# DISCUSSION

## I. Legal Standard

A motion to dismiss may challenge the complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, all well-pleaded allegations are accepted as true, and all reasonable inferences are drawn in plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Factual allegations must be sufficient to state a claim to relief that is plausible on its face, rather than merely speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Generally, a complaint need only provide a short and plain statement giving defendants fair notice of the nature and basis of each claim. *Id.*, 550 U.S. at 554-55; Fed. R. Civ. P. 8(a)(2). But a fraud claim must allege facts with particularity. Fed. R. Civ. P. 9(b). Under Rule 9(b), a fraud claim must identify: (1) the person(s) who made the alleged misrepresentation; (2) the time, place, and content of the misrepresentation; and (3) the method by which the misrepresentation was communicated. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997). In other words, the rule requires the "who, what, when, where, and how" of the circumstances of the alleged fraud. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

The False Claims Act imposes liability on a person who knowingly presents, or causes to be presented, a false or fraudulent claim to the government for payment. 31 U.S.C. § 3729(a)(1). The Illinois Whistleblower Reward and Protection Act ("IWRPA") closely mirrors the False Claims Act, imposing liability on those who submit or cause the submission of false claims to the State. 740 Ill. Comp. Stat. § 175/3(a)(1). Both are anti-fraud statutes; therefore, they are subject to the heightened pleading standards of Fed. R. Civ. P. 9(b). *United States ex rel. Gross v. AIDS*

3

*Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005) (Rule 9(b) applies to claims brought under the False Claims Act); *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 470 (7th Cir. 1999) (Rule 9(b) applies to state fraud claims brought in federal court). In the context of alleged False Claims Act violations, plaintiffs must link specific allegations of fraud to claims for government payment. *Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

## II. Sufficiency of the Amended Complaint

Mason alleges Medline violated the False Claims Act and IWRPA through the following schemes: (1) providing kickbacks and bribes to healthcare providers; (2) fraudulently inducing the federal government to agree to improper tracking customers in their procurement contracts and then giving below-government pricing to those tracking customers; and (3) overbilling the government's mail-order pharmacy program. Each alleged scheme will be addressed separately to determine whether it states a claim and complies with Rule 9(b)'s heightened pleading standard.

### A. Cost Reports as False Claims

Mason alleges Medline paid kickbacks and bribes to healthcare providers throughout the relevant period – October 2001 to the present. By doing so, Medline caused those providers to submit false cost reports in violation of the False Claims Act and IWRPA. Healthcare providers are required to submit annual cost reports to the Centers for Medicare and Medicaid Services ("CMS"), the federal agency that administers Medicare and Medicaid. 42 C.F.R. § 413.20(b). Medline argues the cost reports are not "claims" within the meaning of the False Claims Act because they are not requests for payments. *See* 31 U.S.C. § 3729(c) (broadly defining claims as any requests or demands for payment, at least part of which will be paid by the government). While it is true healthcare providers receive Medicare/Medicaid payments on an interim basis

4

throughout the year, the providers' actual costs cannot be determined until the end of the accounting period. 42 C.F.R. § 413.64(a)-(c). The CMS cost reports are used to make retroactive adjustments to the interim payments depending on the providers' actual, rather than estimated, costs. *Id.*; Am. Comp. ¶ 107. Because the CMS cost reports are an integral part of the Medicare/Medicaid reimbursement calculus, they constitute claims within the scope of Section 3729. *See also United States v. Bourseau*, 531 F.3d 1159, 1164 n. 1 (9th Cir. 2008) (courts have squarely rejected arguments that cost reports are not claims for payment); *United States ex rel. Bledsoe v. Comm. Health Sys., Inc.*, 501 F.3d 493, 512 (6th Cir. 2007) (applying Rule 9(b) to a False Claims Act violation regarding an inflated cost report).

Even if the cost reports constitute claims, Mason's allegations are deficient because he does not adequately plead fraud with particularity as required by Fed. R. Civ. P. 9(b). Mason contends the CMS cost reports are fraudulent because the healthcare providers are not properly accounting for kickbacks and bribes received from Medline. Mason supports his allegations with numerous examples of corporate practices he contends resulted in the submission of false cost reports. But the number of examples does not compensate for their lack of particularity. As discussed below, none of these allegations survive scrutiny under Rule 9(b).

Mason argues Medline perpetrated fraud by using rebates, prebates, and inventory consignment payments to attract business from healthcare providers. Am. Comp. ¶¶ 46-67. Mason admits rebates are a common and legitimate practice, but he contends Medline's practices made it difficult for providers to disclose them on cost reports. *Id.* ¶ 51. Prebates are pre-purchase cash payments to providers in exchange for agreed-upon purchase commitments. *Id.* ¶ 53. Repayment is required if the provider falls short of its commitment. *Id.* Consignment payments involved Medline's purchase of a provider's inventory of a competitor's goods to be

5

replaced by Medline's goods. *Id.* ¶ 62. Medline would not take possession of the competitor's goods, but would allow the provider to keep and use them. *Id.* If the provider stops purchasing from Medline, it must buy back the inventory at market value. *Id.* ¶¶ 62-63. Mason alleges the prebates and consignment payments constitute unlawful remuneration within the meaning of the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b). AKS makes it a felony to knowingly and willfully offer or pay any remuneration to induce someone to purchase goods for which payment may be made under a federal healthcare program. 42 U.S.C. § 1320a-7b(b)(2)(B). Numerous exceptions are carved out of this general prohibition. 42 U.S.C. § 1320a-7b(b)(3); 42 C.F.R. § 1001.952. Medline does not argue these practices fall within any of the statutory safe-harbor provisions. But Mason's allegations fail for another reason: he does not adequately link any of these practices to a particular false cost report. *United States ex rel. Crews v. NCS Healthcare of Illinois, Inc.*, 460 F.3d 853, 856-57 (7th Cir. 2006); *Garst*, 328 F.3d at 378.

The *sine qua non* of a False Claims Act violation is the submission of a fraudulent claim. *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002). Mason must link specific allegations of deceit to claims for government payment. *Gross*, 415 F.3d at 605; *Garst*, 328 F.3d at 378. Mason identifies six healthcare providers that filed CMS cost reports while also receiving either rebates, prebates, or consignment payments from Medline. Am. Comp. ¶ 121. The amended complaint does not, however, describe with particularity how these referenced cost reports are fraudulent. Mason cherry-picks three line entries from each cost report in support of his allegation that the reports fail to disclose payments from Medline. *Id.* But these entries standing alone demonstrate nothing. Mason has the burden to link specific acts of deceit to false claims. *Gross*, 415 F.3d at 605; *Garst*, 328 F.3d at 378. Mason admits there are numerous ways a provider can account for discounts received and rebates

6

earned. Am. Comp. ¶ 116. He is merely speculating these providers failed to account for Medline's payments through otherwise proper accounting techniques. Speculation does not satisfy Rule 9(b)'s particularity requirements. *LHLC Corp. v. Cluett, Peabody & Co.*, 842 F.2d 928, 933 (7th Cir. 1988).

Mason's other allegations of kickbacks and bribes fail for the same reasons: they are not pled with particularity nor are they tied to any false claims. According to Mason, Medline paid kickbacks and bribes to healthcare providers though donations made by Medline's charitable foundation. Am. Comp. ¶¶ 88-90. Of all the provider donees listed in the amended complaint, only one (Mt. Sinai Hospital) is alleged to have submitted any CMS cost reports. *Id.* ¶¶ 95, 97, 99, 121. The court will not speculate that other parties submitted cost reports. *Crews*, 460 F.3d at 856; *Clausen*, 290 F.3d at 1311. With respect to Mt. Sinai, Mason offers no facts at all supporting his characterization of the donations as kickbacks or bribes. Conclusory allegations are insufficient under Rule 9(b). *Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1127 (7th Cir. 1990). He does not identify who at Medline authorized these donations. He does not provide any detail suggesting Medline and Mt. Sinai reached an understanding as to an illicit purpose of the donations. He does not tie a donation to any false CMS cost report. Mason simply has not established the necessary links between a fraudulent scheme and a false claim.

Mason claims Medline bribed individuals who made purchasing decisions on behalf of healthcare providers. Am. Comp. ¶¶ 77-87. A Medline executive allegedly gave gambling money to a provider executive at a Las Vegas seminar in 2005. *Id.* ¶ 78. The complaint provides the "who, what, and when" but not the "why" or "how." Mason fails to allege this money was given or received as a bribe. It is not alleged this provider *ever* purchased goods from Medline, let alone as a result of this encounter. Mason provides examples where the "bribes" took the

7

form of hiring family members of provider executives. *Id.* ¶¶ 79-84. The amended complaint refers to five providers allegedly associated with these employment bribes; none are alleged to have submitted CMS cost reports. The failure to link these purported bribes to false cost reports is fatal to Mason's claims. *See Garst*, 328 F.3d at 378 (essential to link allegations of deceit with claims). In any event, Mason's hiring allegations are too feeble to satisfy the requirements of Rule 9(b). He contends one employee was hired "perhaps [] as a favor" to a provider, and a second was given substantial severance pay "apparently [] to mollify" another provider. Am. Comp. ¶¶ 79, 82. These speculative allegations fail to plead fraud with particularity.

Mason alleges Medline caused false cost reports to be filed by disguising rebate payments to providers in ways that would make those payments difficult to disclose. *Id.* ¶¶ 68-76. In some instances, Medline would apply rebate payments owed to a provider against the provider's outstanding invoices. *Id.* ¶¶ 69, 71. Medline also leased equipment to a provider in exchange for deductions against its rebate balance. *Id.* ¶ 72. Mason claims Medline "laundered" some rebate payments by issuing them to entities affiliated with a provider, rather than the provider itself. *Id.* ¶¶ 73-76. Mason believes these practices would make it easier for providers to conceal the rebate payments from the government. His belief is not enough; Rule 9(b) requires that he plead particular facts demonstrating these rebates were not properly accounted for. *Garst*, 328 F.3d at 378; *see also Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923-24 (7th Cir. 1992) (allegations upon information and belief do not satisfy Rule 9(b)'s particularity requirements). As noted above, Mason acknowledges providers can account for discounts and rebates in various ways on the cost reports. Am. Comp. ¶ 116. His allegation that Medline's practices would make it easier for providers to conceal these rebate payments is a far cry from demonstrating that any provider did conceal the payments.

8

Mason also contends the providers' cost reports were false because they falsely certified the providers' compliance with healthcare laws and regulations, including the AKS. *Id.* ¶ 110. The cost reports contain a clause admonishing providers that they are subject to criminal, civil, and/or administrative sanctions if services identified in the reports were obtained through kickback payments. *Id.* ¶ 109. Providers must certify the services identified in the report were provided in compliance with that clause and other healthcare laws. *Id.* False certifications are actionable under the False Claims Act if they lead the government to make payments which would otherwise not be made. *Gross*, 415 F.3d at 604. Falsely certifying compliance with the AKS in a cost report is actionable under the False Claims Act. *United States v. Rogan*, 459 F.Supp.2d 692, 717 (N.D. Ill. 2006), *aff'd*, 517 F.3d 449 (7th Cir. 2008); *United States ex rel. McNutt v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1260 (11th Cir. 2005). The particularity requirements of Rule 9(b) also apply to claims based on allegedly false certifications of compliance. *Gross*, 415 F.3d at 604.

A certification cannot be false unless services were obtained by unlawful means. Mason's failure to adequately plead an underlying bribe or kickback dooms any claim premised on the compliance certifications. Mason is also required to establish a connection between a bribe or kickback from Medline and a specific false certification. *See Crews*, 460 F.3d at 857; *Gross*, 4150 F.3d at 605. The amended complaint fails to do that.

### B. Procurement Fraud

Mason next alleges Medline fraudulently induced the federal government into accepting improper benchmark customers for pricing purposes. Am. Comp. ¶¶ 144-47. He also alleges Medline manipulated pricing to those customers to avoid contract clauses that would require

9

lower pricing for the government. *Id.* ¶¶ 153-69. Mason contends Medline's claims to the government were falsely inflated as a result.

Medline sells directly to the Department of Veterans Affairs ("the VA") under procurement contracts. *Id.* ¶ 23. The VA negotiates and awards procurement contracts to sell specified medical-surgical supplies to federal agencies. *Id.* ¶¶ 126-27. The VA seeks to obtain pricing equivalent to that offered to a vendor's most-favored customers, or at least those with similar purchasing characteristics. *Id.* ¶ 129. To accomplish this end, vendors must disclose certain information regarding their customers, including pricing and sales volumes. *Id.* The procurement contracts include Price Reduction Clauses ("PRCs") identifying a benchmark customer or category of customers ("tracking customers"). *Id.* ¶ 130. Throughout the life of the procurement contract, discounts or rebates offered or given to the tracking customers must be reported to the VA and applied to the federal government. *Id.*

Mason claims Medline undermined the VA's effort to identify appropriate tracking customers by failing to provide "government negotiators with current, complete and/or accurate information as to pricing for other Medline customers, specifically their purchasing volumes, pricing, discounts, rebates and/or other terms relevant to government negotiators." *Id.* ¶ 144. Conclusory statements do not satisfy Rule 9(b)'s pleading requirements. *Robin*, 915 F.2d at 1127. Mason does not identify who at Medline negotiated with the VA or when these negotiations took place (he narrows it down only to the relevant period – October 2001 to the present). He does not specify what information was provided to the VA and why it was inaccurate. Mason believes the tracking customers agreed to by the VA were not appropriate given the VA's purchasing characteristics. Am. Comp. ¶ 147. Speculation is not enough. *LHLC Corp.*, 842 F.2d at 933. Without identifying who made the alleged misrepresentation, the context

10

in which it was made, its content, and the means by which it was made, Mason cannot satisfy the requirements of Rule 9(b). *Gen. Elec. Capital Corp.*, 128 F.3d at 1078.

Mason alleges Medline also defrauded the VA by manipulating pricing to other customers in order to avoid the PRCs. He claims Medline encouraged some tracking customers to switch to "direct sales," a maneuver allowing them to receive below-government pricing. Am. Comp. ¶ 163. Mason does not specify who made these representations, when they were made, what customers made this switch (if any), or what effect this had on claims submitted to the government. Medline allegedly encouraged other customers to leave a "tracking" group and join a different one in order to qualify for below-government pricing. *Id.* ¶¶ 165-66. Mason fails to identify which customers were spoken to, when these conversations took place, and what effect this had on claims submitted to the government. Mason also claims Medline gave below-government pricing to tracking customers without reporting or applying those discounts to the VA, but he does not provide any specific facts supporting this allegation. *Id.* ¶¶ 167-69. Mason has not satisfied Rule 9(b)'s requirement to give Medline notice of the alleged fraud. *Gen. Elec. Capital Corp.*, 128 F.3d at 1078.

Mason's allegations regarding Medline's efforts to circumvent the PRCs are deficient for the additional reason that they do not link specific allegations of deceit to claims for government payment. *Garst*, 328 F.3d at 374. He categorically states Medline has presented false claims and been paid for nearly 20,000 transactions with the government. Am. Comp. ¶ 184. He identifies a number of delivery orders made under the procurement contracts in 2008 and the dollar amounts of those orders. *Id.* ¶¶ 184-85. But Mason does not tie the fraud he witnessed during his employment to claims submitted years after his employment ended. He does not explain what, if

11

anything, is false about these particular claims. Mason has not carried his burden to link a fraudulent scheme to a specific false claim. *Crews*, 460 F.3d at 856; *Gross*, 415 F.3d at 605.

## C. Mail-Order Pharmacy Overbilling

Mason alleges a third additional scheme in which Medline defrauded the government in connection with the sale of prescription items purchased from other manufacturers. Under Consolidated Mail Outpatient Pharmacy contracts with the federal government ("CMOPs"), Medline would fill prescriptions by mail using its own supplies as well as national brand goods purchased from other vendors. Am. Comp. ¶¶ 136, 170. With respect to the national brand goods, Mason claims the CMOPs only authorized Medline to charge a fixed distribution fee plus the lower of (a) Medline's actual acquisition cost for the item, or (b) the government's pricing under any supply contract it may have with those manufacturers. *Id.* ¶ 137. Mason alleges Medline frequently violated this provision by charging the government more than its actual costs. *Id.* ¶ 179. The amended complaint cites four CMOPs but attaches none. *Id.* ¶ 138. Medline contends this provision does not exist. In support of its argument, Medline attaches a copy of one of the cited CMOPs to its motion to dismiss. This court recognizes it may properly consider the attached CMOP without converting Medline's motion to dismiss into a Rule 56 summary judgment motion. *See Rosenbloom v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (documents attached to a motion to dismiss may be considered on a Rule 12(b)(6) motion if referenced in plaintiff's complaint and central to his claim). It is unnecessary for this court to make any findings as to this dispute, because Mason's allegations, even if true, do not satisfy the pleading requirements of Rule 9(b).

Mason claims Medline overbilled the government by: (1) purchasing national brand goods on the "gray market" but charging the government as if they were purchased through

12

normal distribution channels; and (2) increasing pricing to the government based on fictitious cost increases. Am. Comp. ¶ 171. These allegations fail because Mason does not provide the requisite degree of particularity and he does not link the alleged fraud with false claims. *Crews*, 460 F.3d at 856. The amended complaint does not identify any products purchased on the "gray market," who made these purchases, and when these purchases were made. Mason does not identify a single specific instance where Medline submitted a false claim based on a fraudulent cost increase. He cannot satisfy Rule 9(b)'s particularity requirement by alleging a general scheme of fraud, but not specific occurrences or facts supporting the scheme. *Gen. Elec. Capital Corp.*, 128 F.3d at 1078. As with his other allegations, Mason fails to tie these allegedly fraudulent practices to a submitted claim. He must establish the link between the alleged fraud and a false claim. *Crews*, 460 F.3d at 857; *Gross*, 415 F.3d at 605. He has failed to do so.

### D. State Law Claim

Mason's failure to adequately plead fraud with particularity and to identify specific false claims is also fatal to his claim under the IWRPA. *Ackerman*, 172 F.3d at 470 (Rule 9(b) applies to state fraud claims brought in federal court); *see also Scachitti v. UBS Fin. Servs.*, 831 N.E.2d 544, 557-58 (Ill. 2005) (interpreting the IWRPA in light of FCA case law); *State ex rel. Beeler Schad & Diamond, P.C. v. Ritz Camera Centers, Inc.*, 878 N.E.2d 1152 (Ill. App. Ct. 2007) (same). The amended complaint alleges only that the State of Illinois has paid millions of dollars to healthcare providers based on cost reports tainted by Medline's unlawful kickbacks and bribes. Am. Comp. ¶ 19. No specificity is given. This conclusory allegation is the only reference to the State of Illinois in the amended complaint. *See Veal v. First American Sav. Bank*, 914 F.2d 909, 913 (7th Cir. 1990) (conclusory allegations do not satisfy Rule 9(b)). Mason has not put Medline on notice of the identity of any provider who submitted a "tainted" claim to the State of Illinois,

13

when such a claim was submitted, or how the claim is tied in to Medline's allegedly fraudulent behavior. *See Garst*, 328 F.3d at 378 (essential to link allegations of deceit to claims). The amended complaint is wholly insufficient to satisfy the pleading requirements of Rule 9(b). Accordingly, Mason's claim under the IWRPA must also be dismissed.

## CONCLUSION

For the reasons set forth above, Medline's motion to dismiss the amended complaint is granted. The amended complaint is dismissed without prejudice.

ENTER:

Suzanne B. Conlon
United States District Judge

May 22, 2009