IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SEAN MASON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 07 C 5615 |
| v. | ) | |
| | ) | Suzanne B. Conlon, Judge |
| MEDLINE INDUSTRIES, INC. and THE | ) | |
| MEDLINE FOUNDATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Relator Sean Mason brings this *qui tam* action against his former employer, Medline

Industries, Inc., and its affiliated not-for-profit corporation, the Medline Foundation (collectively,

"Medline"), asserting violations of the False Claims Act (the "FCA"), 31 U.S.C. § 3729(a)(1)

and (2).[1] Medline moves to dismiss the second amended complaint pursuant to Federal Rule of

Civil Procedure 9(b) and 12(b)(6).  For the reasons set forth below, the motion is denied.

### BACKGROUND

Medline is one of the largest manufacturers and distributors of medical-surgical supplies

in the United States.  Medline sells its products primarily to hospitals and other healthcare

providers, the vast majority of which participate in federal healthcare programs such as Medicare

and Medicaid.  Between December 1998 and September 2005, Medline employed Mason in

several different positions, all dealing with customer contracts and account management.  Over

---

[1] A *qui tam* action is brought by a private party ("the relator") on behalf of the government.
The government remains the real party in interest. *United States ex rel. Lu v. Ou*, 368 F.3d 773, 774
(7th Cir. 2004).

the course of his employment, Mason allegedly observed Medline engaging in extensive acts of fraud resulting in the submission of false claims to the federal government.

Mason originally filed this case in October 2007 on behalf of the United States and the State of Illinois. In accordance with the FCA's *qui tam* provision, 31 U.S.C. § 3730, the complaint remained under seal while the United States and Illinois determined whether they would intervene and proceed with the case. Both declined to do so. Mason's first amended complaint alleged that Medline violated the FCA and the Illinois Whistleblower Reward and Protection Act (the "IWRPA"), 740 ILCS 175/1 *et seq.*, by: (1) providing bribes and kickbacks to healthcare providers; (2) fraudulently inducing the federal government to agree to improper tracking customers in procurement contracts and then giving below-government pricing to those tracking customers; and (3) overbilling the federal government's mail-order pharmacy program. On May 22, 2009, the court dismissed the first amended complaint without prejudice because Mason failed to link his allegations to specific claims for government payment and failed to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b). Dkt. 82. Mason's second amended complaint is narrower in scope; he omits the IWRPA claim and two of the three alleged schemes.

The second amended complaint claims that Medline used a wide array of kickbacks and bribes to solicit business from healthcare providers. Providers are required to submit annual cost reports to the Centers for Medicare and Medicaid Services, the agency that administers federal healthcare programs. 42 C.F.R. 413.20(b). Each cost report includes a certification attesting to compliance with healthcare laws and regulations, including anti-kickback provisions. Mason claims that by engaging in bribes and kickbacks, Medline knowingly caused the submission of

2

false or fraudulent claims for payment to the United States, and knowingly caused the use of false

statements, resulting in the payment of false or fraudulent claims.  31 U.S.C. § 3729(a)(1) and

(2).

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint, not its merits.

*Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  When considering the motion,

the court accepts as true all well-pleaded allegations, and draws all reasonable inferences in

Mason's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).  Factual allegations

in the complaint must be sufficient to state a claim to relief that is plausible on its face, rather

than merely speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  A claim

is facially plausible when the factual allegations allow the court to draw reasonable inferences

that Medline is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Generally, a complaint need only provide a short and plain statement giving defendants

fair notice of the nature and basis of each claim. Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at

554-55.  Allegations of fraud, however, are subject to the heightened pleading standard set forth

in Federal Rule of Civil Procedure 9(b), which requires plaintiffs to plead fraud with

particularity.  Complaints alleging fraud must provide "the who, what, when, where, and how."

*Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).  The FCA is an

anti-fraud statute subject to Rule 9(b)'s heightened pleading requirement. *United States ex rel.*

*Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005).  Plaintiffs

proceeding under the FCA must link specific allegations of fraud to claims for government

payment. *Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

3

## DISCUSSION

The FCA imposes civil liability on any person who "knowingly presents, or causes to be presented . . . a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1).  To state a claim under this section, Mason must allege: (1) there was a false or fraudulent claim; (2) Medline knew the claim was false; and (3) Medline presented the claim or caused it to be presented to the United States for payment or approval. *United States ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 740-41 (7th Cir. 2007).

The FCA also imposes liability on one who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2).  Under this provision, Mason must allege that: (1) Medline made, or caused a healthcare provider to make, a statement to receive money from the government; (2) the statement was false; and (3) Medline knew it was false. *Fowler*, 496 F.3d at 741.  Because Mason's claims are premised upon a false certification of statutory or regulatory compliance, he must also allege that the certification was a condition of or prerequisite to payment by the government. *United States ex rel. Crews v. NCS Healthcare of Ill., Inc.*, 460 F.3d 853, 858 (7th Cir. 2006); *Gross*, 415 F.3d at 604.

In May 2009, Congress enacted the Fraud Enforcement and Recovery Act ("FERA"), Pub. L. No. 111-21, 123 Stat. 1617, which amended the language of § 3729(a)(2).  Under the new version, recodified as 31 U.S.C. § 3729(a)(1)(B), a person is liable if he "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  Section 4(f)(1) of FERA provides that this change "shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claims Act that are pending on or after that date."  The FCA defines a claim as "any request or demand . . . for money or property." 31

U.S.C. § 3729(c).[2] While this *case* was pending on June 7, 2008, Mason does not allege that any *claims*, as defined by § 3729(c), were pending at that time. The United States declined to intervene but submitted a Statement of Interest arguing that FERA's amendment should be read to apply retroactively to all legal claims alleging violations of the FCA, not claims to the government for payment. Several courts have addressed the government's argument; none have been persuaded. *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1327 n. 3 (11th Cir. 2009); *United States ex rel. Sanders v. Allison Engine*, No. 1:95-cv-970, *et al.*, 2009 WL 3626773, at *2-4 (S.D. Ohio Oct. 27, 2009); *United States v. Sci. Applications Int'l Corp.*, No. 04-1543, 2009 WL 2929250, at *13-15 (D.D.C. Sept. 14, 2009);

The United States contends the phrase "claims under the False Claims Act" does not implicate the FCA's definition of "claim" in § 3729(c), but rather indicates Congress' intent that the amended provision apply retroactively to *legal claims*. Statutory definitions control the meaning of statutory words. *Lawson v. Suwanee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949). Given § 3729's unambiguous definition of "claim," FERA has no impact on this case because none of the claims at issue were pending on or after June 7, 2008. *BedRoc, Ltd. v. United States*, 541 U.S. 176, 183 (2004) (task of statutory interpretation "ends there [if] the text is unambiguous"). Moreover, the full text of FERA's § 4(f) supports the conclusion that Congress did not intend "claims" in §4(f)(1) to mean "cases." *See United States v. Webber*, 536 F.3d 584 (7th Cir. 2008) (context, and not just literal text, will often reveal Congress' intent with respect to a particular statute) (citation omitted); *Dersch Energies, Inc. v. Shell Oil Co.*, 314 F.3d 846, 856 (7th Cir. 2002) (statute must be construed in its proper context). In § 4(f)(2), the provision

---

[2] FERA amended the definition of claim in a way not relevant to this case. The new definition is codified as 31 U.S.C. § 3729(b)(2).

immediately following the section at issue here, Congress provided that "section 3731(b) of title 31, as amended . . . shall apply to *cases* pending on the date of enactment." Pub. L. No. 111-21, 123 Stat. 1625. If Congress intended the retroactivity of § 4(f)(1) be measured by "cases," it would have said so just as it did in § 4(f)(2). The court interprets § 4(f)(1) to apply to "claims" as defined in the FCA. Accordingly, FERA's amendment does not apply retroactively to this case.

I.    **Sufficient Factual Basis**

Medline argues the second amended complaint should be dismissed for failing to satisfy Rule 9(b)'s pleading standard and failing to provide a sufficient factual background from which a factfinder could conclude the alleged transactions were bribes and kickbacks. Mason contends the court already found the complaint to be in compliance with Rule 9(b) when leave was granted to file the complaint. Mason reads too much into that ruling. In granting leave to amend, the court determined the second amended complaint was *not clearly futile*. *See* Order of Dec. 2, 2009, Dkt. 100. The court did not preclude a further challenge to the complaint under Rule 9(b).

Even so, the second amended complaint is sufficient to satisfy Rule 9(b)'s heightened pleading standard. A plaintiff who pleads a fraudulent scheme involving numerous transactions over a period of years need not plead specifics with respect to every instance of fraud, but he must at least provide representative examples. *United States ex rel. Bledsoe v. Comm. Health Sys., Inc.*, 501 F.3d 493, 509-10 (6th Cir. 2007); *United States v. Ortho-McNeil Pharm., Inc.*, No. 03 C 8239, 2007 WL 2091185, at * 3 (N.D. Ill. July 20, 2007) (Kendall, J.). In addition to outlining the allegedly fraudulent schemes, Mason provides concrete examples, identifying the individuals and businesses involved, the relevant time frames, and the manner in which the bribes or kickbacks were paid. *See, e.g.*, 2d Am. Compl. ¶¶ 54-59, 66-69, 75-77, 83-85, 91, 97-

98, 109-11, 118, 124-25, 147-48, 153-54, 160-64, 173, 179-81, 187, 201-02, 209-14. Mason also

links the allegations of fraud to particular cost reports submitted by healthcare providers. *Id.* at

¶¶ 61, 71, 79-80, 87, 93, 100, 113, 120, 126, 149, 156, 168, 175, 183, 189, 204, 216. Rule 9(b)'s

heightened pleading standard serves to "assure that the charge of fraud is responsible and

supported, rather than defamatory and extortionate." *Ackerman v. Nw. Mut. Life. Ins. Co.*, 172

F.3d 467, 469 (7th Cir. 1999). Mason's allegations are pled with enough particularity to satisfy

the substance and purpose of Rule 9(b).

Medline contends dismissal is appropriate under Rule 12(b)(6) because the second

amended complaint takes common and legitimate business practices, such as rebates, and

characterizes them as bribes and kickbacks without an adequate factual basis. Medline's

argument raises questions of fact not appropriate for resolution on a motion to dismiss. Mason's

factual allegations as to the circumstances surrounding Medline's conduct are sufficient for the

court to reasonably infer Medline is liable for the alleged misconduct. *Iqbal*, 129 S.Ct. at 1949.

Viewed in the light most favorable to Mason, Medline's practices could reasonably be construed

as explicit or thinly-veiled efforts to provide unlawful kickbacks and bribes in exchange for

purchasing commitments. Medline's motion to dismiss on this basis is denied.

## II.     Falsity of the Cost Reports

To state a claim under § 3729(a)(1), Mason must allege that Medline caused a healthcare

provider to make a false claim to the government, knowing the claim to be false. To state a claim

under § 3729(a)(2), Mason must allege that Medline caused a provider to make a false statement

to the government in order to obtain payment for a claim, knowing the statement to be false, and

that the statement was a condition of payment. Mason's theory is that Medline caused healthcare

providers to submit false claims (the cost reports) to the government, as well as false statements

7

(the certifications) to obtain payment for those claims. The cost reports and accompanying

certifications were false because the underlying services were provided in violation of the Anti-

Kickback Statute (the "AKS"), 42 U.S.C. § 1320a-7b. The AKS provides, in relevant part, that:

> (1) whoever knowingly and willfully solicits or receives any remuneration
> (including any kickback, bribe, or rebate) directly or indirectly, overtly or
> covertly, in cash or in kind –
>
>> (A) in return for referring an individual to a person for the furnishing or
>> arranging for the furnishing of any item or service for which payment
>> may be made in whole or in part under a Federal health care program, or
>>
>> (B) in return for purchasing, leasing, ordering, or arranging for or
>> recommending purchasing, leasing, or ordering any good, facility,
>> service, or item for which payment may be made in whole or in part
>> under a Federal health care program, shall be guilty of a felony . . . .
>
> (2) whoever knowingly and willfully offers or pays any remuneration (including
> any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash
> or in kind to any person to induce such person –
>
>> (A) to refer to an individual to a person for the furnishing or arranging
>> for the furnishing of any item or service for which payment may be made
>> in whole or in part under a Federal health care program, or
>>
>> (B) to purchase, lease, order, or arrange for or recommend purchasing,
>> leasing, or ordering any good, facility, service, or item for which
>> payment may be made in whole or in part under a Federal health care
>> program, shall be guilty of a felony . . . .

42 U.S.C. § 1320a-7b(b).

By its terms, the AKS ascribes liability to parties on either side of an impermissible

transaction. Medline contends the cost reports and accompanying certifications are not false

unless the providers themselves knowingly violated the AKS, an allegation that Mason

admittedly does not make. Pl. Resp. at 2. The *sine qua non* of an FCA violation is the

submission of a false or fraudulent claim. *United States ex rel. Clausen v. Lab. Corp. of Am.*,

290 F.3d 1301, 1311 (11th Cir. 2002). "Claim" is easy to interpret as it is defined in the FCA as

a request or demand for money or property. 31 U.S.C. § 3729(b)(2) (previously codified as §

3729(c)). As the court previously found, cost reports are claims within the meaning of the FCA.

*See* Memorandum Opinion and Order of May 22, 2009, Dkt. 82 at 5. But the phrase "false or

fraudulent" is not explicitly defined in the FCA. Medline argues the cost report certifications

pertain only to the *providers'* conduct, thus they are not false unless the providers are culpable

under the AKS. It is necessary to look to the language of the cost report itself:

> MISREPRESENTATION OR FALSIFICATION OF ANY INFORMATION
> CONTAINED IN THIS COST REPORT MAY BE PUNISHABLE BY
> CRIMINAL, CIVIL AND ADMINISTRATIVE ACTION, FINE AND/OR
> IMPRISONMENT UNDER FEDERAL LAW. FURTHERMORE, **IF
> SERVICES IDENTIFIED BY THIS REPORT WERE PROVIDED OR
> PROCURED THROUGH THE PAYMENT DIRECTLY OR
> INDIRECTLY OF A KICKBACK** OR WERE OTHERWISE ILLEGAL,
> CRIMINAL, CIVIL AND ADMINISTRATIVE ACTION, FINES, AND/OR
> IMPRISONMENT MAY RESULT.
>
> CERTIFICATION BY OFFICER OR ADMINISTRATOR OR PROVIDER(S)
>
> I HEREBY CERTIFY that I have read the above statement and that I have
> examined the accompanying electronically filed or manually submitted cost
> report and the Balance Sheet and Statement of Revenue and Expenses prepared
> by . . . (Provider Name(s) and Number(s)) for the cost reporting period
> beginning . . . and ending . . . and that to the best of my knowledge and belief it
> is a true, correct and complete statement prepared from the books and records of
> the provider in accordance with applicable instructions, except as noted. **I
> further certify that** I am familiar with the laws and regulations regarding the
> provision of health care services and that **the services identified in this cost
> report were provided in compliance with such laws and regulations**.

2d Am. Compl. ¶ 38 (emphases in complaint).

According to Medline, the falsity of a cost report and accompanying certification turns on

the knowledge or conduct of the submitting party – the healthcare provider. In other words, even

assuming Medline knowingly paid bribes and kickbacks to solicit business from providers and

knew those providers would seek reimbursement from federal healthcare programs, the cost

reports are not false for purposes of the FCA unless the providers themselves violated the AKS. To take an example from the second amended complaint, Medline allegedly bribed Fred Richardson, an influential county commissioner, in return for his influence in recommending purchases by county hospitals. 2d Am. Compl. ¶¶ 54-62. The hospitals, in turn, submitted cost reports to the government with the certifications of compliance. Mason does not argue the hospitals themselves knowingly and willfully violated the AKS, but that the services underlying the cost report were tainted by Medline's bribes and kickbacks. In Medline's view, the cost reports were not "false" solely because Medline violated the AKS. Neither the Supreme Court nor the Seventh Circuit has explicitly adopted or rejected the theory advanced by Mason.

Congress wrote the FCA expansively, "meaning to reach all types of fraud, without qualification, that might result in financial loss to the Government." *Cook County, Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 129 (2003) (citation omitted). In amending the FCA in 1986, Congress emphasized that the scope of "false or fraudulent claims" should be broadly construed:

> [E]ach and every claim submitted under a contract, loan guarantee, or other agreement which was originally obtained by means of false statements or other corrupt or fraudulent conduct, or in violation of any statute or applicable regulation, constitutes a false claim.

S. Rep. No. 99-345, at 9 (1986), *reprinted in* 1986 U.S.C.C.A.N. at 5247. In light of these standards, the court finds Medline has not met its burden of showing it is entitled to dismissal as a matter of law. Medline's narrow "false or fraudulent" construction has not been established by legal precedent.

It is well-established that a person may submit a false claim to the government without knowing it is false. *See, e.g., United States v. Bornstein*, 423 U.S. 303, 313 (1976) (claims

10

submitted by an innocent prime contractor were rendered false under the FCA by the previous actions of a subcontractor); *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 539-43 (1943) (claims rendered false even though the submitting parties were innocent, both in terms of their knowledge and lack of participation in illegal scheme). The first paragraph of the cost report certification clearly indicates that criminal or civil action may result "if services identified by this report were provided or procured through the" direct or indirect payment of a kickback. 2d Am. Compl. ¶ 38. The language suggests a cost report tainted by unlawful kickbacks or bribes is false or fraudulent for purposes of the FCA. Similarly, the providers' statements as to compliance with applicable healthcare laws, including the AKS, may be rendered false by Medline irrespective of the providers' knowledge. Assuming Mason's allegations are true, as the court must at this point, Medline engaged in a pattern of bribes and kickbacks, the necessary and foreseeable consequence of which was the submission of cost reports and the accompanying certifications. That is sufficient to state a claim upon which relief can be granted. *Allison Engine Corp. v. United States ex rel. Sanders*, 128 S.Ct. 2123, 2130 (2008) (defendant liable under the FCA for the natural, ordinary, and reasonable consequences of his conduct). The FCA places liability not only on persons who cause false claims to be submitted or who cause false statements to be made, but also on those who cause the claims or statements to be false in the first place. 31 U.S.C. § 3729(a)(1) and (2); *Bornstein*, 423 U.S. at 313; *Hess*, 317 U.S. at 539-43. The providers' subjective knowledge is relevant to their liability under the FCA, but not to Medline's. *See United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 244 (3d Cir. 2004) (outcome in a false certification case depends on defendant's knowledge and conduct, not on whether the actual presenters were duped or participated in the fraudulent scheme).

11

The wealth of case law supports the proposition that the FCA reaches claims that are rendered false by one party, but submitted to the government by another. *Bornstein*, 423 U.S. at 313; *Hess*, 317 U.S. at 539-43; *see also United States v. Rivera*, 55 F.3d 703, 706-07 (1st Cir. 1995) (defendant caused third party to submit false claims, although the claims may not have been false or fraudulent from third party's perspective); *see also United States ex rel. Kennedy v. Aventis Pharms., Inc.*, 610 F.Supp.2d 938, 943-44 (N.D. Ill. 2009) (Kennelly, J.); *In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F.Supp.2d 12, 15-16 (D. Mass. 2007); *United States ex rel. Fry v. Guidant Corp.*, No. 3:03-0842, 2006 WL 2633740, at *11-12 (M.D. Tenn. Sept. 13, 2006); *United States v. Inc. Vill. of Island Park*, 888 F.Supp. 419, 440 (S.D.N.Y. 1995). Medline is presumed to have intended the natural consequences of its actions. *Allison Engine Co.*, 128 S.Ct. at 2130. Mason alleges that Medline's contracts with providers expressly acknowledged that providers would submit claims for payment to the federal government. 2d Am. Compl. ¶ 14. When all reasonable inferences are drawn in Mason's favor, the submission of cost reports tainted by bribes and kickbacks, along with their accompanying certifications, was a natural and foreseeable consequence of Medline's actions. Accordingly, Medline's motion to dismiss on this ground is denied.

## III.   Materiality

To adequately state an FCA violation based upon a false certification of statutory or regulatory compliance, the relator must allege that the certification was a condition of or prerequisite to payment by the government. *Crews*, 460 F.3d at 858; *Gross*, 415 F.3d at 604. Mason alleges that government payment to healthcare providers is conditioned upon the express certifications in the cost reports, and that federal law prohibits the government from paying claims tainted by unlawful remuneration. 2d Am. Compl. ¶¶ 1, 37-39. It is not necessary to

12

restate the full language of the certification, but one can reasonably infer from its terms that government payment is conditioned upon compliance with federal healthcare laws. *Id.* at ¶ 38. Throughout the second amended complaint, Mason alleges the false certifications were material to the government's decision to pay the providers' claims. *Id.* at ¶¶ 63, 73, 81, 89, 95, 102, 115, 122, 128, 151, 158, 170, 177, 185, 191, 206, 218.

Medline argues these "conclusory" allegations are insufficient to state a claim under the FCA. But Medline does not cite any controlling authority holding that, at the pleading stage, a relator must do more than allege that a particular certification of compliance was a condition of government payment. Mason is not required to prove his case at this point; the second amended complaint is sufficient so long as the factual allegations and reasonable inferences plausibly suggest that Mason has a right to relief. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). Mason has sufficiently alleged that the cost report certifications are a required condition of government payment under federal healthcare programs. The allegation is more than speculative. Certifications are material to government reimbursement under Medicare. *McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259-60 (11th Cir. 2005); *Zimmer*, 386 F.3d at 243; *United States v. Rogan*, 459 F.Supp.2d 692, 717 (N.D. Ill. 2006) (Darrah, J.), *aff'd*, 517 F.3d 449 (7th Cir. 2008); *United States ex rel. Bidani v. Lewis*, 264 F.Supp.2d 612, 615-16 (N.D. Ill. 2003) (Moran, J.)

## IV.  Scienter

The FCA imposes liability on a person who "*knowingly* presents, or causes to be presented . . . a false or fraudulent claim for payment or approval" or "*knowingly* makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved.." 31 U.S.C. § 3729(a)(1) and (2) (emphases added). A person acts knowingly when

13

he has actual knowledge of the information or acts in deliberate ignorance or reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b). No proof of specific intent to defraud is required. *Id.* The statute sets a fairly low standard with respect to the necessary intent. *United States ex rel. Chandler v. Cook County, Ill.*, 277 F.3d 969, 976 (7th Cir. 2002). Medline contends that dismissal is warranted because Mason makes only conclusory allegations as to Medline's knowledge. Although allegations of fraud must be pled with particularity, knowledge may be averred generally as long as there is some basis for believing the plaintiff could prove scienter. Fed. R. Civ. P. 9(b); *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990).

Viewed in the light most favorable to Mason, the allegations provide a sufficient basis to infer that Medline possessed the necessary intent required for liability under the FCA. Medline allegedly knowingly paid kickbacks and bribes to solicit purchasing commitments from healthcare providers. *See, e.g.*, 2d Am. Compl. ¶¶ 54-59, 64-68, 118. Medline knew the providers would seek reimbursement from the federal government; in fact, Medline's contracts with providers expressly acknowledged that providers would file claims for government payment. *Id.* Despite an enormous volume of sales to businesses participating in federal healthcare programs, Medline made no efforts to ensure compliance with applicable statutory and regulatory provisions. *Id.* at ¶¶ 30-31. Medline is liable under the FCA for the foreseeable consequences of its conduct. *Allison Engine Co.*, 128 S.Ct. at 2130. There is an adequate basis to believe that Mason may prove Medline knowingly caused the submission of false claims and supporting false statements.

## V.       Sufficiency of § 3729(a)(2) Claim

Count II of the second amended complaint seeks to hold Medline liable under 31 U.S.C. § 3729(a)(2). This section penalizes any person "who knowingly makes, uses, or causes to be

made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2).  In 2008, the Supreme Court stated that "to get" denotes purpose, thus a defendant must have the purpose of getting a false or fraudulent claim paid by the government in order to be liable under § 3729(a)(2).  *Allison Engine Co. v. United States ex rel. Sanders*, 128 S.Ct. 2123, 2128 (2008).  Medline argues that Mason has failed to state a claim under § 3729(a)(2) because he did not plead that Medline specifically intended the United States rely on the false certifications when making payments to providers.

In *Allison Engine*, the relator produced fraudulent invoices submitted by subcontractors to a primary contractor as evidence of false statements to get false claims paid under § 3729(a)(2). There was no evidence the subcontractors intended for the federal government to pay the bill. The Supreme Court concluded that:

> [A] subcontractor violates § 3729(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim.  If a subcontractor or another defendant makes a false statement to a private entity and does not intend the Government to rely on that false statement as a condition of payment, the statement is not made with the purpose of inducing payment of a false claim "by the Government."  In such a situation, the direct link between the false statement and the Government's decision to pay or approve a false claim is too attenuated to establish liability.

128 S.Ct. at 2130.  The defendant must intend that the claim be paid by the government, as opposed to another entity.  *Id.* at 2129.  This ensures that a defendant is not answerable under the FCA for anything beyond the "natural, ordinary and reasonable" consequences of his conduct. *Id.* at 2130.  Mason's allegations do not fall short of this standard.  Medline is alleged to have been well aware that healthcare providers receiving its bribes and kickbacks, the majority of which participate in Medicare and Medicaid, would file claims for reimbursement with the federal government.  The natural and reasonable consequence of Medline's conduct was

that providers would falsely certify compliance with applicable healthcare laws and regulations, and that the United States would rely on those certifications in reimbursing providers for goods and services tainted by bribes and kickbacks.  Mason adequately alleges that Medline knowingly caused the making of false statements with the purpose of inducing payment by the government. That is sufficient to satisfy the requirements of *Allison Engine*.  The second amended complaint states a claim for relief under 31 U.S.C. § 3729(a)(2).

## CONCLUSION

For the reasons set forth above, Medline's motion to dismiss the second amended complaint is denied.

ENTER:

Suzanne B. Conlon
United States District Judge

February 18, 2010

16